Filed 2/29/16  Marriage of Bulcao and Simmons CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of JAMES M. and CHRISTIE L. BULCAO. | |
| JAMES M. BULCAO,<br><br>        Respondent,<br><br>v.<br><br>CHRISTIE L. SIMMONS,<br><br>        Appellant. | A145530<br><br>(Alameda County<br>Super. Ct. No. FF08413292) |

Christie L. Simmons appeals from trial court orders granting her ex-husband, James M. Bulcao, additional weekend visits with their daughter Olivia and custody of Olivia for six weeks during her summer vacation.[1,2]  Christie argues the trial court erred by holding hearings on matters not properly before it, rendering an order contrary to the evidence, and providing James with legal advice.  While we question the trial court's decision to entertain James's requests to modify visitation without requiring him to file a proper motion, we find any error was harmless since Christie was provided with notice and a hearing.  We also conclude the trial court's order was supported by the evidence, and the court did not provide James with legal advice.

---

[1] For simplicity, we refer to the parties by their first names.  We intend no disrespect in doing so.

[2] James has declined to file a respondent's brief.

# I. BACKGROUND

James and Christie were married for almost 12 years. They had two children together, Evan in 1996 and Olivia in 2004. James petitioned for dissolution of the marriage in or around 2008. Christie did not respond to the petition, and judgment of dissolution was entered in July 2009.

The couple was ordered to share joint legal custody of the children, with Christie retaining physical custody of Olivia, and James retaining physical custody of Evan. In February 2010, the trial court issued an order allowing Christie to move Olivia to Richmond. Olivia was to spend two weekends per month with James, and the court ordered Christie to provide transportation for these visits.

In April 2014, Christie filed a motion requesting permission for Olivia to relocate to Morgan Hill, where Christie and her new husband were purchasing a house. The Morgan Hill home was about 40 miles from James's residence, the same distance as Christie's old home in Richmond. Additionally, Christie requested modification of the time of day on which Olivia was to be exchanged and the exchange location. She also requested that James provide some transportation for Olivia's visits. All other aspects of James's visitation were to remain the same. Olivia was to visit James on the second and fourth weekends of the month and remain with Christie on the first, third, and fifth weekend, to the extent there was one.

The parties separately met with a child custody mediator. James conveyed to the mediator he wanted custody of Olivia because he believed she was not performing well academically, and would do better in the school district in which he resided. James also opposed the change in exchange time. The mediator concluded James had not provided a compelling reason to consider a change of custody. He also found the move to Morgan Hill would not adversely affect James's time share or the distance Olivia would need to travel.

A hearing was held on the matter on June 26, 2014. James appeared in propria persona. The trial court asked James if he would like to increase visitation to the first,

2

third, and fifth weekends of the month. James replied, "That would be good, for a start." Christie's attorney indicated her client would "accept that."

James then indicated he would also like to increase visitation with Olivia during her summer vacation, indicating he wanted her for "at least half" the summer. Christie expressed concern James would leave Olivia with her paternal grandmother during this time. The trial court stated it would not take up the issue because it was not raised before the hearing. However, the court said it was open to granting James additional visitation with Olivia subject to additional mediation.

Finally, James requested the trial court grant him primary physical custody of Olivia, citing concerns with her academic performance. The court responded it would need to see greater engagement from James, as well as some evidence of a problem, before altering the preexisting custody order. The court explained: "So if you want to have a bigger role in their lives, I'm in favor of that. You have to advocate, . . . through all the steps of the process. You have to bring a Request For Orders that explains that that's what you want. You can't just wait till the court date and say, by the way, since she's not doing well in school it's time for her to come live with me."

At the conclusion of the hearing, the court stated it was referring the matter to family court services to (1) "discuss an even split next summer," and (2) "discuss having [Olivia] go live with [James] on possibly a short-term basis." For "procedural and jurisdictional" reasons, Christie's counsel asked the court to instruct James to file a motion "so that we're clear on what's going on," and so Christie was not "sandbagged by the process." The court stated there was no requirement for a motion to change summer visitation, but James would need to file a motion on the issue of physical custody.

On August 14, 2014, the court issued an order stating: "If Father intends to pursue his request for custody over Olivia, then he must timely file a Request for Order which will be heard on the same date as the review of the Summer and Holiday schedules. [¶] . . . This matter is continued to March 17, 2015 . . . to review the Summer and Holiday schedules and custody only if Father files a Request for Order seeking said relief."

3

Prior to the scheduled hearing, the child custody mediator issued a report, stating James no longer wished to pursue physical custody of Olivia. The report also made the following recommendations: Olivia primarily live with Christie during the school year, Olivia spend six weeks with James during the summer, and each parent have Olivia for one two-week vacation period during the summer.

At the March 17 hearing, Christie's new counsel objected to the mediator's recommended orders, arguing James "has not done procedurally anything to put these issues properly before the Court." Counsel asserted the August 14, 2014 order stated the court would review a change in custody and the summer schedule only if James filed a motion requesting such relief, and James had declined to do so. The court overruled the objection, explaining James only needed to file a motion in order to seek a change in custody. The court ultimately adopted the mediator's recommendation that James be granted custody of Olivia for six weeks during the summer.

## II. DISCUSSION

### A. *No Due Process Violation*

Christie argues the trial court violated her due process rights by granting James additional weekend and summer visitation without requiring him to file a motion for such relief. Though the trial court's conduct does raise some concerns, we find the court did not commit reversible error.

James raised the issue of additional weekend visits for the first time during his discussions with the mediator prior to the June 26, 2014 hearing. There is no indication James filed a motion or request for orders on the issue. But not only did Christie decline to object to James's failure to properly raise the issue, she also agreed to additional weekend visits at the June 26 hearing. Christie now argues she was "caught by surprise" by the request and "afraid the court would not allow her relocation" to Morgan Hill if she refused to agree. This assertion is not supported by any citation to the record. Moreover, having reviewed the transcript of the June 26 hearing, we find nothing remotely suggesting the trial court pressured Christie into agreeing to additional weekend visits with James.

4

James also did not file a motion or request for orders regarding additional summer visitation with Olivia. Nevertheless, Christie was afforded notice and a hearing on the issue. At the June 26, 2014 hearing, the trial court stated it was referring the issue of summer visitation to family court services so it could take up the issue at the next hearing, which was held on March 17, 2015. While the court's subsequent minute order was not a model of clarity, the court's oral statements at the June 26 hearing should have left no doubt James was not required to file a motion on the issue of summer visitation. Thus, Christie had almost *nine* months to prepare an opposition or responsive declaration to James's request. Moreover, she was provided with and took advantage of an opportunity to express her substantive objections to the request at the March 17 hearing.

Based on this record, we can discern no basis for finding a due process violation. (See *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1500 [" '[d]ue process guarantees " 'notice and opportunity for hearing appropriate to the nature of the case,' " ' " italics omitted].) Moreover, Christie has not pointed to any statute or other authority that would suggest the trial court lacked the power to set a hearing on visitation issues on its own motion.[3] To the contrary, the court retained broad authority to make such visitation orders. Pursuant to Family Code section 3022, "The court may, during the pendency of a proceeding or at any time thereafter, make an order for the custody of a child during minority that seems necessary or proper."[4]

While we find the trial court did not commit reversible error, we cannot condone its approach in this matter. The court's decision to excuse James from the usual procedural protocols may have been a well-intentioned effort to accommodate a pro. per.

[3] Contrary to Christie's contention, Code of Civil Procedure section 309 has no application here. That statute provides: "A question of fact not put in issue by the pleadings may be tried by a jury, upon an order for the trial, stating distinctly and plainly the question of fact to be tried; and such order is the only authority necessary for a trial." (Code Civ. Proc., § 309.) Nothing in the statute suggests a trial court may not consider an issue unless it is raised by motion.

[4] Christie also contends the trial court violated her due process rights by failing to read her request for orders. The argument has no foundation in the record.

litigant, but it could be construed as unfair by the parties. This is especially so since Christie was compelled to retain counsel and file the appropriate motions to obtain the relief she desired. At the March 17 hearing, Christie remarked: "I'm confused as to why I always have to file for things and this person over here [(James)] does not, that they merely make a suggestion in court and there's no motions filed, there's no—I don't understand that, why it's just a suggestion by him and then things flow through." Though Christie's concerns do not justify reversal, we think they do warrant consideration by the trial court in future matters.

**B.** *Visitation Order Is Supported by Evidence*

We review rulings modifying child visitation orders for an abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) To the extent Christie challenges the trial court's factual findings, our review is limited to whether substantial evidence supports the trial court's ruling. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 300.) "We resolve conflicts in evidence in favor of the prevailing party and draw all reasonable inferences to uphold the trial court's decision." (*Ibid.*)

Christie argues the court's order modifying visitation was an abuse of discretion because James did not present evidence Olivia's relocation to Morgan Hill would interfere with their relationship. But there is no indication that was the basis for the trial court's ruling. Rather the court found it would be equitable to grant James additional visitation during the summer since Olivia spent almost all of the school year with Christie. At an earlier hearing the court also stated: "I do think it's important that you [(James)] get to live with your daughter and not just be a weekend dad." Moreover, the court's order was consistent with the mediator's report, which stated Olivia would benefit from spending more time with her father, and recommended she spend six weeks with him during the summer.

Accordingly, we find the trial court did not abuse its discretion in modifying visitation to allow Olivia to spend six weeks with James during the summer.

## C. *Trial Court Did Not Give James Legal Advice*

Finally, Christie contends the trial court committed reversible error by providing James with legal advice during the proceedings. The argument is meritless. First, Christie asserts the court pressured her into agreeing to allow Olivia to visit James during the fifth weekend of the month. However, as discussed above, there is no evidence in the record suggesting Christie's agreement was coerced by the court or anyone else. Second, Christie asserts the court provided James with "detailed legal advice" on the steps he should take to obtain custody of Olivia. Her briefing appears to confuse legal advice with an attempt to explain the court's rationale. The court merely stated it would not grant James custody because he had not filed a motion or request for orders. Finally, Christie argues the trial court was biased in favor of James because it granted him additional visitation without requiring him to file a motion or request for orders. As discussed above, we find there was no due process violation because the court provided Christie with notice and a hearing.

## III. DISPOSITION

The trial court's orders modifying visitation are affirmed. The parties shall bear their own costs on appeal.


_____
Margulies, J.


We concur:


_____
Humes, P.J.


_____
Dondero, J.


7